IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Astar Abatement, Inc., Plaintiff, | : | Case No. 1:11-cv-587 |
| v. | : | Chief Judge Susan J. Dlott |
| Cincinnati City School District Board of Education, *et al.* Defendants. | : | ORDER DENYING MOTION TO DISMISS |

This matter is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim (doc. 5). Plaintiff Astar Abatement, Inc. ("Astar") has sued Defendants Cincinnati School District Board of Education ("CPS") and Pinnacle Environmental Consultants, Inc. ("Pinnacle") to recover payment and damages arising from asbestos abatement services it provided for CPS. Astar asserts breach of contract and unjust enrichment claims against CPS and a negligence claim against Pinnacle. Both Defendants have moved to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Civil Rules of Procedure.

## I. BACKGROUND

The allegations stated in Astar's Complaint (doc. 1) are taken as true for purposes of the Motion to Dismiss. The key allegations can be briefly summarized here. Additional allegations relevant to particular claims are stated in the Analysis section below.

Prior to August 26, 2010 CPS solicited bids for asbestos abatement work to be performed at the Sayler Park School in Cincinnati, Ohio. (Doc. 1 at 2.) Upon information and belief, Pinnacle designed and prepared for bid the asbestos abatement work to be performed.

(*Id.*) Pinnacle agreed to design, prepare, administer and oversee the abatement work, to inspect and approve the work, and to recommend payments and compensation. (*Id.*) Pinnacle served as the project engineer and CPS's representative at the project. (*Id.* at 7.)

Astar bid to perform asbestos work at the Sayler Park project and was awarded the bid. (*Id.* at 1–2.) On September 20, 2010, Astar signed a written contract which included a standard "Contract Form" prepared by the State of Ohio/Ohio School Facilities Commission and a standard "General Conditions" form (collectively, "the Contract"). (Doc. 8-1.)[1] During the course of its performance at the Sayler Park project, Astar encountered differing site conditions that resulted in substantial extra work and additional costs for Astar. (Doc. 1 at 3.) Astar also incurred additional costs when CPS and Pinnacle required it to utilize a different method of asbestos disposal than it had intended to use. (*Id.* at 4.) Astar performed its obligations under the Contract, including providing notice to CPS and Pinnacle of items that resulted in additional work, delays, or additional costs. (*Id.*) Defendants refused to execute change orders or to pay for Astar's additional work performed and costs incurred. (*Id.* at 4–8.)

On August 4, 2011, Astar filed the instant action against Defendants CPS and Pinnacle. Defendants filed the pending Motion to Dismiss on November 14, 2011. The Motion is fully briefed and ripe for adjudication.

## II. STANDARDS GOVERNING MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais*

[1] Astar did not attach a copy of the Contract to the Complaint, but CPS filed it as an attachment to the Amended Declaration of Daniel J. Hoying. (Doc. 8-1.)

*and Co., Inc*., 108 F.3d 86, 88 (6th Cir. 1997). However, this tenet is inapplicable to legal conclusions, or legal conclusions couched as factual allegations, which are not entitled to an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949–50 (2009).

To withstand a dismissal motion, a complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "[T]he complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Harvard v. Wayne Cty.*, 436 F. App'x 451, 457 (6th Cir. 2011) (internal quotation or citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.[2] The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

## III. ANALYSIS

### A. Breach of Contract Claim Against Astar

In Count I of the Complaint, Astar alleges that CPS breached the Contract. Defendants seek to dismiss this claim on the basis that Astar has failed to state a claim upon which relief can be granted. Defendants generally assert that Astar did not allege sufficient facts to meet the

---

[2] In accordance with this standard, the Supreme Court also specifically repudiated the pleading standard articulated in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that a complaint fails to state a claim when it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 562–63. The *Twombly* Court said the "no set of facts" language from *Conley* had "earned it retirement" and was "best forgotten." *Id.* at 563.

standards set forth in *Iqbal* and *Twombly* that the right to relief be raised above a speculative level. "A breach of contract claim in Ohio has four elements: (1) the existence of a contract; (2) the plaintiff's performance; (3) the defendant's breach; and (4) the existence of damages." *Veracity Group, Inc. v. Cooper-Atkins Corp., Inc.* No. 1:11-cv-526, 2012 WL 203415, at *6 (S.D. Ohio Jan. 24, 2012) (citing *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (interpreting Ohio law)). "To survive a motion to dismiss a plaintiff need not describe all the details of the alleged breach, but must plead sufficient facts to show that he is entitled to relief." *Robins v. Global Fitness Holdings, LLC*, No. 1:11-cv-1373, 2012 WL 163031, at *7 (N.D. Ohio Jan. 18, 2012).

Astar has pleaded facts, not mere conclusory allegations, as to each element. First, Astar pleaded that it was awarded the Contract for asbestos abatement services at the Sayler Park School following a bidding process. (Doc. 1 at 2–3.) Astar pleaded that the Contract contained specific provisions which shifted the risk of additional costs created by "differing site conditions" to CPS as the project owner. (*Id.* at 3.) Second, Astar pleaded that it fulfilled its obligations under the Contract, despite the fact that it allegedly encountered delays and incurred additional costs as a result of "differing site conditions" and Defendants' insistence on more costly methods. (*Id.* at 3–4.) Third, Astar pleaded that CPS breached the Contract in multiple ways, including by requiring Astar to utilize a more costly method to dispose of asbestos, refusing to execute change orders and pay for additional work and increased costs, and failing to pay for work performed pursuant to the contract. (*Id.*) Fourth, Astar pleaded that it incurred costs as result of CPS's breach, including costs associated with performing additional work,

costs resulting from delays and increased overhead, and costs associated with having to change its methods, and lost profits and business opportunities. (*Id.* at 4–5.)

CPS argues that these allegations are insufficient because Astar did not specifically plead that it satisfied each express prerequisite in the contract to recover payment for the work performed. For one example, the Contract required Astar to stop work and provide written notice to CPS if it encountered differing site conditions. (Contract General Conditions ¶ 7.5.2., Doc. 8-1 at 14.) CPS faults Astar for not specifically pleading that it stopped work and provided written notice. Rule 8 of the Federal Rules of Civil Procedure does not require such specificity, even in the age of *Iqbal* and *Twombly*. Astar is "not required under Rule 8 to allege each specific fact that supports their claims." *Bishop v. Children's Center for Dev. Enrichment*, No. 2:08-cv-766, 2011 WL 5506105, at *13 (S.D. Ohio Nov. 10, 2011). The relevant issue is not whether Astar could have included additional factual allegations, but rather the sufficiency of the factual allegations which were included. *See DSW, Inc. v. Zina Eva, Inc.*, No. 2:11-cv-0036, 2011 WL 1336569, at *3 (S.D. Ohio Apr. 6, 2011).

Astar pleaded that "[i]n accord with its contractual obligations, Astar notified both Pinnacle and [CPS] of each and every item which resulted in extra or additional work, delays, disruption, or additional costs." (Doc. 1 at 4.) It further pleaded that it "performed each and every obligation required under the Contract." (*Id.*) The Complaint allegations, taken as a whole, are sufficient to give CPS "fair notice of [Astar's] breach of contract claim and the grounds upon which it rests." *See Bishop*, 2011 WL 5506105, at *13. CPS's arguments to the contrary, that Astar did not meet the contractual notice requirements, can be addressed more properly at summary judgment.

CPS makes two other arguments that bear discussion. First, CPS asserts that the claim should be dismissed because Astar failed to plead that it complied with the dispute resolution process set forth in Article 8 of the General Conditions to the Contract. This Article 8 argument is akin to raising the affirmative defense of failure to exhaust administrative remedies. *See Cent. Allied Ents., Inc. v. Adjutant Gen.'s Dept.*, No. 10AP-701, 2011 WL 4477250, at *9 (Ohio App. Sept. 27, 2011) (analyzing similar language in a public works contract); *see also Jones v. Bock*, 549 U.S. 199, 211–12 (2007) (stating generally that failure to exhaust administrative remedies is an affirmative defense); *Dworning v. Euclid*, 119 Ohio St. 3d 83, 86, 892 N.E.2d 420, 423 (2008) (same). In the absence of controlling authority to the contrary, this Court will not dismiss this breach of contract claim pursuant to Rule 12(b)(6) based on an argument that Astar had to anticipate and plead facts sufficient to defeat an affirmative defense.[3]

Next, CPS argues that the State of Ohio, and not CPS, is the true party subject to the Contract. The Contract states in the preamble as follows:

> **THE CONTRACT, evidenced by this Contract Form**, is made and entered into by and between: **ASTAR ABATEMENT, INC**. . . . (the "Contractor") and the State of Ohio (the "State"), through the President and Treasurer of the **Board of Education of the Cincinnati Public School District Board** (the "School District Board") on the date executed by the School District Board.

---

[3] CPS relies on *Nemazee v. Mt. Sinai Med. Center*, 56 Ohio St. 3d 109, 564 N.E.2d 477 (1990), wherein the Ohio Supreme Court held that "[a] physician in a private hospital whose employment and/or hospital privileges have been terminated must exhaust all internal administrative remedies prior to seeking judicial review." *Id.* at syllabus. The Ohio Supreme Court granted a motion to dismiss. *Id.* at 111 n.3. The holding in this case has been distinguished as arising from "state law deference to the procedures of private hospitals." *Gaston v. ABX Air, Inc.*, No. 1:03-cv-423, 2007 WL 869728, at *9 (S.D. Ohio Mar. 20, 2007); *Dworning*, 119 Ohio St. 3d at 89. Moreover, it is not clear from the *Nemazee* decision whether the claims were dismissed for inadequate pleadings or based on a consideration of evidence demonstrating that the plaintiff had not exhausted his administrative remedies.

(Contract, Doc. 8-1 at 2 (bolding and capitalization in the original).) CPS relies on *Ingle-Barr, Inc. v. Scioto Valley Loc. Sch. Dist. Bd.*, 193 Ohio App. 3d 628, 629–31, 953 N.E.2d 363 (2011), where the court held that the State of Ohio, and not the local school district, was the real party pursuant to a contract with similar language.

*Ingle-Barr* is not dispositive at this stage. The court in *Ingle-Barr* provided only limited analysis. It did not discuss whether other language in the relevant contract could have been interpreted to indicate that the school board was a party. In this case, other language in the Contract can be interpreted to suggest that CPS is a party to the Contract. Article 2 states that CPS shall pay the contract price. (Contract ¶ 2.1, Doc. 8-1 at 2.) Article 3 authorizes CPS to grant extensions of time and the right to collect liquidated damages from Astar in appropriate circumstances. (Contract Art. 3, Doc. 8-1 at 3.) Article 4 states that "[t]he Contract Documents embody the entire understanding of the parties and form the basis of the Contract between the School District Board [CPS] and the Contractor." (Contract ¶ 4.1, Doc. 8-1 at 3 (emphasis added).) Article 7 gives CPS the authority to order changes in the work. (Contract General Conditions ¶ 7.1.1, Doc. 8-1 at 8.) Accordingly, the Court preliminarily finds that the language in the Contract is ambiguous. The Court may need to rely on extrinsic evidence not properly before the Court on this Motion to Dismiss to determine the intent of parties' regarding the identity of the persons who can be sued as parties to the Contract. The Court will not dismiss the breach of contract claim at this stage.

## B. Unjust Enrichment Claim Against CPS

In Count II, Astar asserts a claim that CPS is liable to it for unjust enrichment. A plaintiff must prove three elements to prove an unjust enrichment claim in Ohio: "1) plaintiff conferred a benefit on defendant; 2) defendant knew of such benefit; 3) defendant retained the benefit under circumstances where it would be unjust to do so without payment." *Resource Title Agency, Inc. v. Morreale Real Estate Servs., Inc.* 314 F. Supp. 2d 763, 771–72 (N.D. Ohio 2004) (citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183, 465 N.E.2d 1298 (1984)); *see also Auto Chem Labs., Inc. v. Turtle Wax, Inc.*, No. 3:07cv00156, 2010 WL 3860660, at *2 (S.D. Ohio Feb. 23, 2010) (also quoting *Hambleton*). Astar alleges that it conferred a benefit upon CPS by virtue of the additional and extra work it performed at the project, such as the work related to differing site conditions, changed method of performance, and delays. (Doc. 1 at 5–6.) It also alleges that it provided notice to CPS about each item of extra work, and that CPS has retained the benefit of the work without paying Astar. (*Id.* at 4, 6.)

CPS moves to dismiss the claim on the primary basis that Astar should not be permitted to assert an unjust enrichment claim when it has elsewhere in the Complaint asserted that a contract governs its relationship with CPS regarding the Sayler Park project. Under Ohio law, "a plaintiff may not recover under the theory of unjust enrichment when an express contract covers the same subject." *Ebenisterie Beaubois Ltee v. Marous Bros. Const., Inc.*, No. 02 CV 985, 2002 WL 32818011, at *6 (N.D. Ohio Oct. 17, 2002); *see also Resource Title Agency*, 314 F. Supp. 2d at 772. However, several courts have allowed a plaintiff to plead unjust enrichment in the alternative to a breach of contract where there is a dispute as to the existence or enforceability of the contract. *See, e.g.*, *Ortega v. Wells Fargo Bank, N.A.*, No. 3:11CV01734, 2012 WL 275055,

at *11 (N.D. Ohio Jan. 31, 2012); *Ebensterie*, 2002 WL 3281801, at *6; *Resource Title Agency, Inc.*, 314 F. Supp. 2d at 772.

In this case, the existence of the Contract for the Sayler Park project is not in dispute. However, as discussed above, the Contract contains ambiguous, or contradictory, language as to whether the State of Ohio or CPS is the proper party to the Contract with Astar. If the State of Ohio is the contracting party, but CPS the beneficiary of the work provided by Astar, then "[c]ircumstances may exist to support an unjust enrichment claim against a non-contracting party who benefits from the uncompensated work of one of the parties to the contract." *Resource Title Agency*, 314 F. Supp. 2d at 772 (quoting *Nationwide Heating & Cooling, Inc. v. K & C Constr.*, No. 87AP-129, 1987 WL 16802, at *2 (Ohio App. Sept. 10, 1987)). The Court will not dismiss the unjust enrichment claim at the pleading stage.

**C. Negligence Claim Against Pinnacle**

In Count III, Astar asserts a claim for negligence against Pinnacle. Astar asserts that Pinnacle owed a duty of care to Astar as the project engineer and the owner's representative on the project and that Pinnacle breached that duty in numerous ways. (Doc. 1 at 7.) Pinnacle moves to dismiss this claim on two grounds. First, Pinnacle contends that the claim is barred by the doctrine of claim preclusion. Second, Pinnacle contends that it owed no duty to Astar as a matter of law under the facts alleged.

Beginning with the claim preclusion argument, Pinnacle asserts that the negligence claim is barred because Astar should have pleaded it as a compulsory counterclaim in the previous state court litigation between the parties. On February 18, 2011, Pinnacle sued Astar in Municipal Court, Hamilton County, Ohio asserting claims that Astar failed to pay it for

environmental consulting services that Pinnacle performed at Astar's request at Sayler Park School and other locations. *Pinnacle Envtl. Consultants, Inc. v. Astar Abatement, Inc.*, No. 11CV04880, (Muni. Ct. Hamilton Cty. Feb. 18, 2011) ("State Court Action").[4] Pinnacle moved for default judgment seeking liquidated damages only against Astar in the State Court Action on the grounds that Astar failed to appear in the action. *Pinnacle Envtl. Consultants, Inc.*, No. 11cv04880, slip op. at 1 (Muni. Ct. Hamilton County, Apr. 22, 2011).[5] The court entered a default judgment in favor of Pinnacle against Astar on April 22, 2011. (*Id.*)

"Pursuant to the Full Faith and Credit statute, a federal court must give a state court judgment the same preclusive effect that the judgment would have in state court, and must apply the law of the state where that judgment was rendered to determine its preclusive effect in the federal action." *McConnell v. Applied Performance Techs., Inc.*, No. C2-01-1273, 2002 WL 32882707, at *5 n.1 (S.D. Ohio Dec. 11, 2002), *aff'd*, 98 F. App'x 397 (6th Cir. 2004). Accordingly, this Court must apply Ohio law to determine the preclusive effect of the default judgment entered in the State Court Action. Generally stated, "[c]laim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action[.]" *Miller v. Countrywide Home Loans*, 747 F. Supp. 2d 947, 959 (S.D. Ohio 2010) (quoting *State ex rel. Nickoli v. Erie MetroParks*, 124 Ohio St. 3d 449, 453, 923 N.E.2d 588 (2010)). Stated more specifically, "a

---

[4] The Complaint in the State Court Action is filed herein at Doc. 5-2. Courts can consider "public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies" on a Rule 12(b)(6) motion. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) *abrogated in part on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

[5] The Motion for Default Judgment and Magistrate's Decision from the State Court Action are filed herein at Doc. 5-3.

valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Id.* at 960 (quoting *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 382, 653 N.E.2d 226 (1995)).

Under Ohio law, default judgments are judgments on the merits which can be attacked only on direct appeal. *See Harris-Gordon v. Mortg. Elec. Reg. Sys.*, No. 3:09CV02700, No. 2010 WL 3910167, at *3 (N.D. Ohio Oct. 4, 2010); *Fed. Deposit Ins. Corp. v. Willoughby*, 19 Ohio App. 3d 51, 53, 482 N.E.2d 1267 (1984). Default judgments, therefore, can act as a bar to later claims under the doctrine of claim preclusion. *See Kline v. Mortg. Elec. Sec. Sys.*, No. 3:08cv408, 2011 WL 1118485, at *5 (S.D. Ohio Feb. 16, 2011), *report and recommendations adopted by*, 2011 WL 1119698 (S.D. Ohio Mar. 24, 2011); *Harris-Gordon*, 2010 WL 3910167, at *3. Compulsory counterclaims which a defendant should have asserted in an action in which default judgment was granted against the defendant are barred by the doctrine of claim preclusion in a subsequent litigation. *See Broadway Mgmt., Inc. v. Godale*, 55 Ohio App. 2d 49, 49–50, 378 N.E.2d 1072 (1977).

Ohio's claim preclusion law and compulsory counterclaim law both require litigants to assert all claims between them arising out of the same "transaction and occurrence" in the one lawsuit. *See* Ohio R. Civ. P. 13(A) (compulsory counterclaim rule); *Grava*, 73 Ohio St. 3d at 382. The Ohio Supreme Court has defined "transaction" as a "common nucleus of operative facts." *Grava*, 73 Ohio St. 3d at 382. Courts ask whether there is a "logical relationship" between the claims to determine if they arise from the same transaction and occurrence. *See Maddox v. Ky. Fin. Co., Inc.*, 736 F.2d 380, 382 (6th Cir. 1984); *Rettig Enters., Inc. v. Koehler*, 68 Ohio St. 3d 274, 278, 626 N.E.2d 99 (1994). Compulsory counterclaims involve many of the

same factual or legal issues such that holding separate trials would result in a duplication of time and effort. *See Rettig Enters.*, 68 Ohio St. 3d at 278–79. Finally, claims arise out of the same transaction and occurrence if they "arise from the same event and seek to redress the same basic wrong." *China Tire Holdings Ltd. v. Goodyear Tire and Rubber Co.*, 91 F. Supp. 2d 1106, 1109 (N.D. Ohio 2000). Astar and CPS disagree whether Astar's negligence claim against Pinnacle in this action was a compulsory counterclaim to Pinnacle's claims against Astar in the State Court Action.

Pinnacle appears to have served two roles at the Sayler Park project. First, Astar alleges in this case that Pinnacle was retained by CPS to be the project engineer and owner's representative at the project. (Doc. 1 at 2, 7.) ) Astar alleges that Pinnacle negligently breached duties it owed to Astar to administer the Contract and oversee the project in a fair and reasonable manner and with ordinary care. (Doc. 1 at 7–8.) Second, Pinnacle alleged in the State Court Action that it also operated a laboratory that analyzed asbestos samples for its clients. (Doc. 5-2 at 4–5.) Pinnacle and Astar signed a written agreement for Pinnacle to analyze asbestos samples taken from Sayler Park project for Astar. (*Id.* at 1, 4–5.) Pinnacle sued Astar in the State Court Action to recover payment for laboratory services rendered to Astar for the Sayler Park project and other projects. (Doc. 5-2 at 1.)

Therefore, while both claims involve the same parties and arise from the Sayler Park project, the factual and legal issues appear to be different. Astar's obligation to pay for laboratory services rendered by Pinnacle sound in contract and are defined by the written agreement between Pinnacle and Astar. Pinnacle's duties to Astar, if any, sound in tort and arose from its role as the project designer and engineer retained by CPS for the Sayler Park

project. Proof of one claim likely would not prove or refute the other claim. The Court cannot conclude on the basis of the limited facts pleaded in Complaint in this action and the Complaint in the State Court Action that the claims asserted therein arise from the same transaction and occurrence. The Court will not dismiss the negligence claim at this time on the basis of claim preclusion.

In the second argument, Pinnacle contends that the negligence claim against it fails as a matter of law pursuant to the economic-loss doctrine. "The economic-loss rule generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.,* 106 Ohio St. 3d 412, 414, 835 N.E.2d 701 (2005). It provides that "a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *All Erection & Crane Rental Corp. v. Acordia Northwest, Inc.*, No. 04-3862, 162 Fed. Appx. 554, 559 (6th Cir. 2006) (citing *Chemtrol Adhesives, Inc. v. American Mfrs. Ins. Co.*, 42 Ohio St. 3d 40, 537 N.E.2d 624, 630 (1989)). The doctrine "prevents a party from recovering economic losses in tort that result from 'a breach of duties assumed only by agreement.'" *Onyx Envtl. Servs., LLC v. Maison*, 407 F. Supp. 2d 874, 879 (N.D. Ohio 2005) (quoting *Corporex Dev. & Constr. Mgmt.*, 106 Ohio St. 3d at 414).

The Sixth Circuit explained that the economic-loss doctrine "prevents the recovery of purely economic losses in a negligence action either where there is no privity or a sufficient nexus that could serve as a substitute for privity or where recovery of such damages is not based upon a tort duty independent of contractually created duties." *Pavlovich v. National City Bank*, 435 F.3d 560, 569 (6th Cir. 2006) (internal quotation and citation omitted). However, several courts interpreting Ohio law have recognized the right of a contractor to sue a design

professional, even in the absence of contractual privity, where the design professional exercised excessive control over the contractor's work. *See Epicentre Strategic Corp. v. Perrysburg Exempted Village Sch. Dist.*, No. 3:04 CV 7467, 2005 WL 646079, at *5 (N.D. Ohio Mar. 18, 2005) (dicta); *J & H Reinforcing & Structural Erectors, Inc. v. Wellston City School Dist.*, No. 09CA8, 2010 WL 2172380, at *4–6 (Ohio App. May 20, 2010); *Nicholson v. Turner/Cargile*, 107 Ohio App. 3d 797, 805–06, 669 N.E.2d 529 (1995); *Clevecon, Inc. v. Northeast Ohio Regional Sewer Dist.*, 90 Ohio App.3d 215, 220–21, 628 N.E.2d 143 (1993); *but see Intn'l Fid. Ins. Co. v. TC Architects, Inc.*, No. 23112, 2006 WL 2683439, at *2–3 (Ohio App. Sept. 20, 2006); *Columbia Gas of Ohio, Inc. v. Crestline Paving & Excavating Co., Inc.*, No. L-02-1093, 2003 WL 397830, at *3 (Ohio App. Feb. 21, 2003).

Astar has alleged that Pinnacle served as a design professional and "agreed to properly design, prepare, administer and oversee the asbestos abatement work as well as properly inspect and approve the work, and also to recommend payment and compensation, and to review and approve change order requests, all in a professional and unbiased manner." (Doc. 1 at 2.) This allegation is sufficient to state a negligence claim against Pinnacle which falls within the excessive control exception to the economic-loss doctrine. The Court will not dismiss the negligence claim against Pinnacle at the pleading stage.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Failure to State a Claim (doc. 5) is hereby **DENIED**.

**IT IS SO ORDERED.**

s/Susan J. Dlott
Chief Judge Susan J. Dlott
United States District Court